**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **SOMERS BOARD OF EDUCATION** | : | **CIVIL ACTION NO.** |
| **Plaintiff** | : | **3:11-CV-00311 (MRK)** |
| | : | |
| **v.** | : | |
| | : | |
| **H.S., A STUDENT, AND MR. AND MRS. S.,** | : | |
| **PARENTS AND NEXT FRIENDS OF H.S.,** | : | |
| **Defendants** | : | **JUNE 14, 2011** |

<u>**DEFENDANTS' ANSWERS, AFFIRMATIVE DEFENSES AND**</u>
<u>**COUNTERCLAIMS**</u>

<u>**INTRODUCTION**</u>

1.  Admitted as to the first sentence; and the fact that a copy of the Decision is appended to the appeal federal and state statutes cited; and that Attorney Oppenheim ordered compensatory education; and to the allegation that the Plaintiff's action is brought pursuant to and in accordance with specific federal and state statutes.  Denied as to the balance of the paragraph.

<u>**THE PARTIES**</u>

2.  Admitted.

3.  Admitted.

<u>**JURISDICTION AND VENUE**</u>

4.  Admitted.

<u>**BACKGROUND**</u>

5.  Admitted.

6.  Admitted, except for the allegation that Hanna had "relatively mild" learning disabilities which is denied; and except for the allegation that at "various times" H.S.'s

IEP's included self-advocacy as either a goal or objective, as every one of H.S.'s IEP's included self-advocacy as either a goal or objective.

7. Denied.

8. Denied

9. Admitted, except as to the allegation that H.S. testified that she had made progress in self-advocacy between ninth and tenth grades which is denied.

10. Admitted, except as to the purpose of the annual goal which the Defendants lack sufficient knowledge to admit or deny and leave the Plaintiff to its proof.

11. Admitted.

12. Admitted.

13. Admitted.

14. Denied.

15. Admitted.

16. Admitted, except for the allegation that school based members of the PPT generally asked whether everything was going well with H.S.'s participation on the Dance Team which is denied; and except for the allegation that at no time did H.S. or her parents ever request accommodations, modifications, or anything of that nature for the Dance Team which is denied.

17. Admitted, except for the allegation that Alison Desrosiers had graduated from college which is denied.

18. Admitted, except for the allegation that for some unspecified reason H.S. felt she had no obligation to respond, which is denied; and except for the allegation that Mrs. S. sent an "angry" email to Gary Cotzin which is denied; and except for the allegation

that the email Mrs. S. sent was sent less than ninety minutes after Desrosiers' request which is denied.

19.   Denied, except for the allegation that Mr. S. and Mrs. S. were concerned about all the girls on the dance team which is admitted; and except for the last sentence of the paragraph which is admitted.

20.   Admitted.

21.   Admitted.

22.   Admitted, except for the allegation that Ms. Desrosiers asked H.S. whether she wanted to use a safety mat which is denied.

23.   Admitted.

24.   Admitted.

25.   Admitted, except for the allegation that at first the emails were positive which is denied.

26.   Admitted.

27.   Admitted, except for the allegation that Desrosiers did not make an issue of H.S.'s removal as head captain which is denied.

28.   Admitted.

29.   Admitted, except for the allegation that H.S. further noted:  "Alison has been there for all of us.  She is a great coach and friend" which is denied.

30.   Admitted, except for the allegation that Mr. and Mrs. S. invited the parents of the other Dance Team members to their house which is denied; and except for the allegation that Mr. S. stated that the parents "immediately reacted negatively to the parents' concerns, dismissing them" which is denied.

31.  Admitted.

32.  Admitted.

33.  Admitted.

34.  Admitted.

35.  Admitted, except for the last sentence of the paragraph which is denied.

36.  Admitted that H.S. quit the Dance Team on March 16, 2010.  Denied that March 16, 2010 was "immediately before" March Madness.  The balance of the paragraph is admitted except for the allegation that H.S. participated for "essentially the entire 2009-2010 school year" which is denied.

37.  Admitted except for the allegation that H.S.'s "purported" experiences on the Dance Team had no effect upon her academics which is denied; and except for the allegation that H.S. received a President's Education Award on the day she quit the Dance Team; and except for the allegation that the President's Education Award which H. S. received "for her determination and hard work in school which given the date of the award had to have occurred during the same months that she was on the Dance Team", which the Defendants lack sufficient knowledge and leave the Plaintiff to its proof.

39.  (Sic)  Admitted.

40.  (Sic)  Admitted that Melinda Ferry promulgated a progress report and that Melinda Ferry noted certain accomplishments of H.S.

41.  (Sic)  Admitted, but it should be noted that "Topics in Algebra II" is a low level high school math class and H.S. still has a significant learning disability in math.

42.  (Sic)  Admitted, except for the allegation that H.S. intends on starting and running a new extracurricular college dance program on her own which is denied.

**COUNT ONE (Appeal of Administrative Decision Pursuant to 20 U.S.C. 1415(i)(2))**

43.  (Sic)  Admitted.

44.  (Sic)  Admitted, except for the allegation that the hearing officer granted the "Motion to Reconsider Hearing Issues" which is denied.

45.  (Sic)  Admitted.

46.  (Sic)  Admitted.

47.  (Sic)  Admitted, except for the allegation that the hearing began on August 10, 2010 which is denied; and except for the allegation that the hearing had commenced seven days prior to H.S. tendering her proposed amendment which is denied.

48.  (Sic)  Admitted, except for the allegation that H.S.'s Motion to Amend did not comply with the IDEA, which is denied.

49.  (Sic)  Denied, except for the allegation that on September 13, 2010, the Board moved to dismiss the Amended Hearing Request for the reason cited which is admitted.

50.  (Sic)  Admitted, except for the allegation that the hearing officer "erroneously" allowed the hearing to proceed, which is denied; and except for the allegation that Attorney Oppenheim erroneously denied the Board's dismissal motion.

51.  (Sic)  Admitted, except for the allegation that the predicate for H.S.'s hearing request and the claims therein was her allegation that Desrosiers had bullied, harassed and/or intimidated her, which is denied.

52.  (Sic)  Denied, except for the allegation that H.S. never claimed that the bullying and harassment she endured was a consequence of or related to her disability which is admitted; and except for the colloquy which occurred on the first day of the nine day hearing, which is admitted.

53. (Sic)  Admitted, except for the allegation that even had H.S. articulated a bullying claim related to her disability, it still would not implicate the IDEA but, at most, would arguably provide a basis for claiming a violation of Section 504 of the Rehabilitation Act, 29 U.S.C. 701, which is denied.

54. (Sic)  Admitted, as to the first and second sentences; denied as to the balance of the paragraph.

55. (Sic)  Admitted as to the first and third sentences; denied as to the second sentence.

56. (Sic)  Denied.

57. (Sic)  Denied.

58. (Sic)  Denied.

59. (Sic)  Admitted as to the first sentence as to what the hearing officer held; denied as to the balance of the paragraph.

60. (Sic)  Admitted as to the first three sentences, denied as to the fourth sentence.

61. (Sic)  Denied.

## II.  RELIEF

Defendants deny that Plaintiff is entitled to any relief.

### AFFIRMATIVE DEFENSES

### First Affirmative Defense

The Plaintiff has failed to state any claim upon which relief can be granted.

### Second Affirmative Defense

The Plaintiff has failed to demonstrate that the Hearing Officer's decision violated the standard of review for overturning a final decision in the Second Circuit.

### Third Affirmative Defense

Section 10-76h-8(f)(2) of the Regulations of Connecticut State Agencies provides that the "party opposing the motion to dismiss shall be allowed seven business days after the hearing officer receives the motion to dismiss to file an amended hearing request prior to the hearing officer's consideration of the motion to dismiss…"  As such, the Amended Hearing Request was timely filed on August 17, 2010.

### COUNTERCLAIMS

### I.   INTRODUCTION

1A.  The Counterclaim Plaintiffs, Mr. S., Mrs. S., and H.S. (hereinafter referred to respectively as "R.S., D.S. and H.S.") hereby appeal from so much of the Final Decision and Order, entered by Hearing Officer Mary Elizabeth Oppenheim in Connecticut Department of Education Case No. 10-0490 on January 14, 2011, which holds that H.S. "was not denied a free appropriate public education [FAPE] and/or had a change in educational placement under IDEA in that she was bullied, harassed and/or intimidated by the dance team advisor and was forced to resign from the dance team as a result of her self-advocacy during her extracurricular dance team"; that H.S.'s removal as head captain

of the Somers High School Dance Team was not in violation of her right to a free appropriate public education under the IDEA; and that H.S.'s "IEP as written was fully implemented." A copy of the Hearing Officer's Final Decision and Order is appended as Exhibit A to the Plaintiff's Amended Complaint dated April 15, 2011 in this case.

1B.  R.S., D.S., H.S., and Counterclaim Plaintiff A.S. (hereinafter A.S.) a minor child, through her parent and next friend R.S., residents of the Town of Somers, Connecticut, (hereinafter "Somers") bring this action for monetary damages against the Town of Somers Board of Education (hereinafter "Board"); David Palmer, the Chairman of the Board, both individually and in his capacity as Chairman; Joan Formeister, Vice Chairwoman of the Board, both individually and in her capacity as Vice-Chairwoman; Bruce Devlin, Member of the Board, both individually and in his capacity as Member; Timothy Potrikus, Member of the Board, both individually and in his capacity as Member; John Taylor, Member of the Board, both individually and in his capacity as Member; Richard Lees, Member of the Board, both individually and in his capacity as Member; Anne Kirkpatrick, Member of the Board, both individually and in her capacity as Member; Sarah Bollinger, Member of the Board, both individually and in her capacity as Member; Marybeth Marquardt, Member of the Board, both individually and in her capacity as Member, (the Chairman, Vice Chairwoman and remaining seven members hereinafter collectively referred to as "Board Members"); Maynard M. Suffredini, Jr., Superintendent of the Somers Public Schools, both individually and in his capacity as Superintendent; Gary Cotzin, Principal of Somers High School, both individually and in his capacity as Principal; Alan Walker, the Athletic Manager of Somers High School, both individually and in his capacity as Athletic Manager; and Alison Desrosiers, the

Somers High School Dance Team Coach, both individually and in her capacity as Dance Team Coach; to redress rights secured to them under 42 U.S.C. Sections 1983, 1985, 1986 and 1988; the Individuals With Disabilities Education Act (20 U.S.C. Section 1400 et seq.); the Americans With Disabilities Act (42 U.S.C. Section 12101 et seq.); Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. Section 794 et seq.); and the First and Fourteenth Amendments to the United States Constitution.  In particular, the Counterclaim Plaintiffs claim damages for violation of their free speech, and/or privacy, and/or due process, and/or equal protection rights, arising from incidents that occurred while H.S. and A.S. were members of the Somers High School Dance Team.  R.S. and D.S. also suffered damages due to the enforcement of a Board of Education policy governing public participation at Board of Education meetings.  Said policy constitutes a prior restraint of R.S. and D.S's free expression and violates their rights to free speech. In addition, all of the Counterclaim Plaintiffs seek to invoke the supplemental jurisdiction of the Court regarding state law claims of infliction of emotional distress, personal injuries, failure to properly screen and hire an employee, failure to train and supervise an employee, failure to protect children in their care, violation of school district policies, violation of professional codes of conduct, interference with parental rights, failure to properly discipline employees, failure to remove an employee for cause, violation of an oath of office, and failure to respond to legitimate parental concerns, as well as for claims arising from Article I, Section 5 and the Twenty-First and Twenty-Ninth Amendments of the Connecticut Constitution.  All of the Counterclaim Plaintiffs further seek attorneys' fees and costs.

2A.  This appeal is brought by R.S., D.S. and H.S. as a compulsory counterclaim in accordance with Rule 13(a) of the Federal Rules of Civil Procedure because it arises out of the same transaction or occurrence that is the subject matter of the Plaintiff's claims in its Amended Complaint herein and does not require for its adjudication the presence of third parties over whom the Court cannot acquire jurisdiction.

2B.  The counterclaims are brought by the Counterclaim Plaintiffs as compulsory and/or permissive counterclaims in accordance with Rule 13(a) and/or Rule 13(b) of the Federal Rules of Civil Procedure because the counterclaims arise out of the transaction or occurrence that is the subject matter of the Plaintiff's claims in its Amended Complaint herein and do not require for their adjudication the presence of third parties of whom the Court cannot acquire jurisdiction.

3.  This cause of action also seeks a declaratory judgment that the Board's policy governing public comment at its meetings violates the First Amendment to the United States Constitution.  R.S. and D.S. further seek attorneys' fees and costs.

## II.     JURISDICTION AND VENUE

4.  Jurisdiction is conferred on this Court by 28 U.S.C. Sections 1331, 1342, 1343, 2201 and 2202; 20 U.S.C. Section 1400 et seq.; 29 U.S.C. Section 794; 42 U.S.C. Section 12101 et seq.; 42 U.S.C. Section 1983 et seq.; and the above described statutory and constitutional provisions.  Counterclaim Plaintiffs also invoke the pendent and/or supplemental jurisdiction of this Court to hear and determine claims arising under Connecticut state law and the Connecticut Constitution, pursuant to 28 U.S.C. Section 1367.

5.  Venue in this District is proper under 28 U.S.C. Section 1391(b)

III.     **PARTIES**

6.  R.S. is a citizen of the United States and a resident of Somers, and is the husband of D.S. and the father of H.S. and A.S.

7.  D.S. is a citizen of the United States and a resident of Somers, and is the wife of R.S. and the mother of H.S. and A.S.

8.  H.S. is a citizen of the United States and a resident of Somers.

9.  A.S. is a citizen of the United States and a resident of Somers and is a minor child who brings this action through her parent and next friend R.S.

10.  The Counterclaim Defendant, Somers Board of Education, (hereinafter "Board") is and was at all times relevant to this Complaint, a Board of Education for the Town of Somers organized under the laws of the State of Connecticut.  At all times relevant to this complaint, Board acted under the color and pretenses of the statutes, ordinances, regulations, customs, and usages of the State of Connecticut and the rules, policies and procedures of the Board.  The Board is also a local education agency as defined by 20 U.S.C. Section 1401(15).

11.  The Counterclaim Defendant, David Palmer, (hereinafter "Palmer") is and was at all times relevant to this Complaint, a Member and/or Chairman of the Board and a resident of Somers.  At all times relevant to this complaint, Palmer, acting individually and/or as a Member of and/or Chairman of the Board, acted under the color and pretenses of the statutes, ordinances, regulations, customs, and usages of the State of Connecticut and the rules, policies, procedures and direction of the Board.

12.  The Counterclaim Defendant, Joan Formeister, (hereinafter "Formeister") is and was at all times relevant to this Complaint, a Member and/or Vice-Chairman of the

Board and a resident of Somers.  At all times relevant to this complaint, Formeister, acting individually and/or as a Member of and/or Vice-Chairman of the Board, acted under the color and pretenses of the statutes, ordinances, regulations, customs, and usages of the State of Connecticut and the rules, policies, procedures and direction of the Board.

13.  The Counterclaim Defendant, Bruce Devlin, (hereinafter "Devlin") is and was at all times relevant to this Complaint, a Member of the Board and a resident of Somers.  At all times relevant to this complaint, Devlin, acting individually and/or as a Member of the Board, acted under the color and pretenses of the statutes, ordinances, regulations, customs, and usages of the State of Connecticut and the rules, policies, procedures and direction of the Board.

14.  The Counterclaim Defendant, Timothy Potrikus, (hereinafter "Potrikus") is and was at all times relevant to this Complaint, a Member of the Board and a resident of Somers.  At all times relevant to this complaint, Potrikus, acting individually and/or as a Member of the Board, acted under the color and pretenses of the statutes, ordinances, regulations, customs, and usages of the State of Connecticut and the rules, policies, procedures and direction of the Board.

15.  The Counterclaim Defendant, John Taylor, (hereinafter "Taylor") is and was at all times relevant to this Complaint, a Member of the Board and a resident of Somers. At all times relevant to this complaint, Taylor, acting individually and/or as a Member of the Board, acted under the color and pretenses of the statutes, ordinances, regulations, customs, and usages of the State of Connecticut and the rules, policies, procedures and direction of the Board.

16.  The Counterclaim Defendant, Robert Lees, (hereinafter "Lees") is and was at all times relevant to this Complaint, a Member of the Board and a resident of Somers.  At all times relevant to this complaint, Lees, acting individually and/or as a Member of the Board, acted under the color and pretenses of the statutes, ordinances, regulations, customs, and usages of the State of Connecticut and the rules, policies, procedures and direction of the Board.

17.  The Counterclaim Defendant, Anne Kirkpatrick, (hereinafter "Kirkpatrick") is and was at all times relevant to this Complaint, a Member of the Board and a resident of Somers.  At all times relevant to this complaint, Kirkpatrick, acting individually and/or as a Member of the Board, acted under the color and pretenses of the statutes, ordinances, regulations, customs, and usages of the State of Connecticut and the rules, policies, procedures and direction of the Board.

18.  The Counterclaim Defendant, Sarah Bollinger, (hereinafter "Bollinger") is and was at all times relevant to this Complaint, a Member of the Board and a resident of Somers.  At all times relevant to this complaint, Bollinger, acting individually and/or as a Member of the Board, acted under the color and pretenses of the statutes, ordinances, regulations, customs, and usages of the State of Connecticut and the rules, policies, procedures and direction of the Board.

19.  The Counterclaim Defendant, Marybeth Marquardt, (hereinafter "Marquardt") is and was at all times relevant to this Complaint, a Member of the Board and a resident of Somers.  At all times relevant to this complaint, Marquardt, acting individually and/or as a Member of the Board, acted under the color and pretenses of the

statutes, ordinances, regulations, customs, and usages of the State of Connecticut and the rules, policies, procedures and direction of the Board.

20.  The Counterclaim Defendant, Maynard M. Suffredini, Jr., (hereinafter "Suffredini") is and was at all times relevant to this Complaint, employed by the Board as the Superintendent of Schools.  At all times relevant to this complaint, Suffredini, acting individually and/or as Superintendent of Schools acted under the color and pretenses of the statutes, ordinances, regulations, customs, and usages of the State of Connecticut and the rules, policies, procedures and direction of the Board.

21.  The Counterclaim Defendant, Gary Cotzin, (hereinafter "Cotzin") is and was at all times relevant to this Complaint, employed by the Board as the Principal of Somers High School.  At all times relevant to this complaint, Cotzin, acting individually and/or as Principal of Somers High School acted under the color and pretenses of the statutes, ordinances, regulations, customs, and usages of the State of Connecticut and the rules, policies, procedures and direction of the Board and Suffredini.

22.  The Counterclaim Defendant, Alan Walker, (hereinafter "Walker") is and was at all times relevant to this Complaint, employed by the Board as the Athletic Manager of Somers High School.  At all times relevant to this complaint, Walker, acting individually and/or as Athletic Manager of Somers High School acted under the color and pretenses of the statutes, ordinances, regulations, customs, and usages of the State of Connecticut and the rules, policies, procedures, and direction of the Board, Suffredini and/or Cotzin.

23.  The Counterclaim Defendant, Alison Desrosiers, (hereinafter "Desrosiers") was at all times relevant to this Complaint, and assigned and designated staff member by

the Board as the Somers High School Dance Team Coach.  At all times relevant to this complaint, Desrosiers, acting individually and/or as Coach of the Somers High School Dance Team acted under the color and pretenses of the statutes, ordinances, regulations, customs, and usages of the State of Connecticut and the rules, policies, procedures, control, and direction of the Board, Suffredini, Cotzin and/or Walker.

## IV.  FACTS

24.  At all times relevant hereto, and in all their actions described herein, the Counterclaim Defendants were acting, jointly and/or severally, both individually and/or in their official capacities, in conspiracy with one another, under the color and pretenses of the statutes, ordinances, regulations, customs, and usages of the State of Connecticut and the rules, policies, procedures and direction of the Board.

25.  H.S. attended Somers High School from August, 2006, until she graduated from Somers High School on June 18, 2010.  H.S. was identified as a special education student (learning disability) and received special education services during her entire four years as a student at Somers High School.  H.S. was a good student who was conscientious about her studies and worked very hard to obtain good grades.

26.  H.S. was shy and quiet when she entered high school. H.S.'s parents and teachers helped her to learn to advocate for herself during her high school years.  H.S. was told by Board staff and believed she needed to advocate for herself while she was in school and while she was out of school.  H.S.'s IEP PPT Summaries while she attended Somers High School unequivocally stated the importance of H.S. advocating for herself as "self advocacy" was either a goal or objective in each and every one of her IEPs.

H.S.'s PPT recommendations consistently noted that she should continue to improve her self advocacy skills.

27. H.S.'s IEP for the 2009-2010 school year was amended on May 29, 2010. The amended IEP included a revision of her goal for self advocacy, broadening it to include practicing of self advocacy skills "to transfer to college and or employment."

28. H.S. was polite, respectful and well liked by the faculty at Somers High School. H.S. was never a discipline problem for any of her teachers. H.S. was never disciplined by the administration at Somers High School. H.S. was considered to be honest and trustworthy by teachers and administrators at Somers High School

29. Dance was H.S.'s only extracurricular activity and she participated on the Dance Team each year that she attended Somers High School. In accordance with longstanding practices, H.S. was elected Captain of the Dance Team by the members of the team at the conclusion of the Dance Team season during her junior year. H.S. was chosen as Head Captain of the Dance Team for her senior year by the other two Captains, in accordance with longstanding practices.

30. H.S. was friends with most of the girls on the Dance Team at the start of her senior year. H.S. got along with all of the girls on the Dance Team at the start of her senior year.

31. H.S. was chosen as Head Captain, in part, because she was a good dancer. A Head Captain's role was to work closely with the coach in helping and teaching the other members of the Dance Team.

32. During H.S.'s first three years on the Dance Team, the team was coached by parent volunteers.

33.   After H.S. was elected as Head Captain, she attempted to obtain a paid coach who would bring the team to the "next level."  H.S. worked with the other two Captains and obtained the assistance of two faculty members in her attempt to obtain funding from the school for a paid coach.  H.S. wanted a professional coach, even though her role as Head Captain would be diminished from the roles of previous Head Captains.

34.   As no funding was available for a paid Dance Team Coach, Cotzin appointed Desrosiers as the new Dance Team Coach on or about September 20, 2009.  Neither Cotzin nor any of his employees, agents and/or servants conducted a prudent, proper, reasonable and/or appropriate background check and/or reference check of Desrosiers prior to having her commence coaching, or thereafter.

35.   Almost immediately after becoming Dance Team Coach, Desrosiers began creating problems for the members of the Dance Team.  As the Hearing Officer stated in her Finding of Facts, "[f]rom the outset, Ms. Desrosiers' tenure as Dance Team advisor was marked by immaturity, poor judgment, dishonesty and inappropriate behavior."

36.   Commencing on or about September 28, 2009, and continuing through March 26, 2010, R.S. and/or D.S. informed Cotzin, in confidence; in writing, and/or in person, and/or by telephone, of mistreatment of H.S. and/or A.S. by Desrosiers.  Said mistreatment included, but was not limited to:  demotion of H.S. from her Head Captain position, harassment, ridicule, intimidation, verbal abuse, unfair punishment, unreasonable punishment, baseless punishment, discrimination, and humiliation of H.S. and A.S.

37.   Commencing on or about September 28, 2009, and continuing through March 26, 2010, R.S. and D.S. informed Cotzin, confidentially, in writing, and/or in person,

and/or by telephone, of issues with Desrosiers' coaching of the Dance Team, including, but not limited to:  Desrosiers being an inappropriate role model for impressionable high school girls; Desrosiers' use of her personal Facebook page to create the "Official Somers High School Dance Team" Facebook site; Desrosiers' allowing the Dance Team Members to access her personal Facebook page which contained numerous salacious photographs; Desrosiers' posting of private information of Dance Team members on the internet; Desrosiers' immature behavior; Desrosiers' lack of concern for safety issues; Desrosiers' apparent creation of a slush fund using Dance Team member's money; Desrosiers' requiring the dance team to commence unapproved fundraising; Desrosiers' inappropriate attitude towards the cheerleading team; Desrosiers' pitting of Dance Team captains against one another; Desrosiers' not being truthful with Dance Team members and/or the administration; Desrosiers' allowance of  unsupervised Dance Team practices; Desrosiers' negative and abusive coaching style; and Desrosiers' creation of a pervasive negative atmosphere of fear and humiliation at Dance Team practices and performances.

38.  On or about October 5, 2009, Desrosiers conducted "tryouts" for the Somers High School Dance Team, in her capacity as Coach of said team.  Said tryouts were held under the direct control and supervision of Desrosiers, with the knowledge of Walker and Cotzin.  Desrosiers held no required Coaching Certificate, nor had a Temporary Emergency Coaching Permit been applied for from the State of Connecticut.

39.  On or about October 8, 2009, Suffredini requested a Temporary Emergency Coaching Permit for Desrosiers, from the State of Connecticut Department of Education.  Suffredini signed an application for said Temporary Emergency Coaching Certificate.  Said application stated that the "applicant will be supervised and assisted, as appropriate,

18

by regular observation, guidance and evaluation of performance."  Said Temporary
Emergency Coaching Permit was issued by the Connecticut Education Department on
October 13, 2009.   Notwithstanding Suffredini's written statement to the State of
Connecticut Department of Education that Counterclaim Defendant would be supervised,
neither Suffredini nor any other Board staff provided appropriate, meaningful, regular, or
proper; supervision, observation, guidance, and/or evaluation of performance of
Desrosiers.

40.  On or about October 8, 2009, Desrosiers released, published, and/or
disseminated confidential and/or private information of H.S. who, at the time was a minor
child, and/or A.S., a minor child, without proper authorization.  Said confidential
information was published on the internet, and included H.S.'s and/or A.S.'s names,
addresses, dates of birth, home telephone numbers, and email addresses.

41.  On or about October 29, 2009, Desrosiers required H S. and A.S. to complete
an alleged "anonymous" and "confidential" survey where they (and every other Dance
Team member) were required to rate and assess other dance team members and captains.
Despite Desrosiers' assurances that no one, including Desrosiers, would ever know who
said what about who, said survey responses were published on the internet, where said
surveys (and the names of the Dance Team members completing same) were easily
viewable, and were neither confidential nor anonymous.

42.  Desrosiers established the "Official Somers High School Dance Team"
Facebook site as the means of communication for the Dance Team members.  Desrosiers
"friended" the Dance Team members which allowed them to access her Facebook sites.
The "Official Somers High School Dance Team" site was administered by Desrosiers and

the profile picture showed Desrosiers and her friends at a gathering drinking alcoholic beverages. By clicking on the profile picture on the "Official Somers High School Dance Team" site, Dance Team Members were able to see all of Desrosiers personal pictures on her Facebook page. Desrosiers personal pictures on her Facebook page contained numerous pictures of Desrosiers and her friends drinking alcoholic beverages and performing simulated acts of a sexual nature which were, as the Hearing Officer stated "wholly inappropriate for a dance team advisor and role model to the students" to allow the students to have access to. Although Cotzin told Desrosiers to stop using the "Official Somers High School Dance Team" Facebook site in October, 2009, Desrosiers continued to use said site to communicate with Dance Team Members until March, 2010.

43. On or about November 4, 2009, Cotzin informed Desrosiers that R.S. and D.S. had complained about the way Desrosiers was coaching the dance team and about her Facebook site. As of November 4, 2009, all of R.S. and D.S.'s complaints regarding Desrosiers (expect for a concern regarding the selection of Captains, which was made on September 28, 2010) were general in nature and did not specifically involve their daughters. R.S. and D.S. believed that their complaints to the administration would remain confidential. All of the complaints at that time could have been addressed without disclosing the name of the complaining party to Desrosiers. R.S. and D.S. were concerned that if Desrosiers was informed as to who was complaining about her, she would take it out on H.S. and A.S.

44. As soon as Desrosiers learned that R.S. and D.S. had complained about her to the school administration, she accused H.S. of being a liar and of undermining her. As soon as Desrosiers learned that R.S. and D.S. had complained about her to the school

20

administration, she "ripped into H.S." and began to retaliate against H.S.  Once Desrosiers learned that R.S. and D.S. had complained about her to the school administration, H.S. lost her responsibility as Head Captain, and was a Captain in name only.

45.  Cotzin's unauthorized disclosure of a confidential complaint was not necessary to effectuate a positive change in Desrosiers' coaching style and her inappropriate actions.  After this breach of confidentiality by Cotzin, Desrosiers began bullying and retaliating against H.S., and Desrosiers' abuse, and mistreatment of H.S. increased and intensified.  Desrosiers also began to bully A.S. as a result of Cotzin's breach of confidentiality, and Desrosiers' bullying, harassment, and/or mistreatment of A.S. continued, in an ongoing course of conduct through March 26, 2010.  Cotzin continued to disclose to Desrosiers other confidential complaints and concerns made to him, to Suffredini, and/or to the Board by R.S. and D.S. through March 26, 2010.

46.  On or about December 11, 2009, the Team received its new uniforms, which were designed and ordered by Desrosiers.  The uniforms were purple and yellow (the school colors of Ellington High School, a rival located in an adjacent town.)  Somers High School's school colors are red and white.  When the Dance Team members received their new uniforms, some of the Team members were concerned with the color of the uniforms.  Some of the Dance Team members felt that the team would be ridiculed for dancing in Ellington's school colors.  Team members complained to H.S. and told her as Head Captain it was her responsibility to go to Desrosiers and attempt to solve the problem.  H.S. approached Desrosiers and suggested that the Team could dance in red and/or white tank tops at the basketball games.  Desrosiers became furious with H.S.

47.  H.S. suggested to the Team members that even though they would have to dance in the purple and yellow uniforms, the Team would still "rock them" and that maybe if the Team won money at dance competitions they could purchase new uniforms. D.S. contacted Cotzin and suggested that the Team could dance in red and white tank tops.  Cotzin asked D.S. to purchase red and white tank tops and stated that the school would reimburse her.  D.S. purchased red and white tank tops and sent the tops to Cotzin as he instructed.  The tops remain in his office and D.S. has never been reimbursed.

48.  Desrosiers was so upset with H.S. and D.S.'s attempts to change the uniform colors on behalf of the team and R.S. and D.S.'s complaints regarding her coaching of the Dance Team that she insisted that H.S. be removed as Head Captain.  Cotzin immediately removed H.S. as Head Captain and then asked Desrosiers to prepare a list of reasons as to why H.S. should not be Head Captain.

49.  After R.S. and D.S. retained an attorney, Cotzin agreed to allow H.S. to state her case as to why she should remain Head Captain.  Cotzin presented a list of "charges" drafted by Desrosiers at a confidential meeting on December 21, 2009.  All of the "charges" against H.S. were untrue.  Neither Cotzin, nor Desrosiers, nor any other witness presented any proof or evidence as to any of the "charges" against H.S. at that meeting.  Despite the lack of proof or evidence as to any of the "charges" by Desrosiers, Cotzin did not change his decision to remove H.S. as Head Captain.

50.  During the confidential meeting on December 21, 2009, Cotzin was presented with several pages of Facebook pictures of Desrosiers and her friends drinking alcoholic beverages and performing simulated acts of a sexual nature.  Cotzin stated that he had already seen these pictures.

51.  During the confidential meeting on December 21, 2009, H.S. uttered a confidential statement in response to a question from Cotzin.  Cotzin and/or his employees and/or agents, disseminated said confidential statement to at least one individual in violation of H.S.'s expectation of and right to privacy.  Later that day, said confidential statement was used as a direct quote in a bullying and harassing voice mail left on H.S.'s cell phone by another Dance Team member which stated that H.S. should quit the Dance Team.

52.  When H.S. arrived for Dance Team practice on the afternoon of December 21, 2009, she found Desrosiers leaning against the wall flipping through the Facebook pictures which had been given to Cotzin at the meeting, in front of the Dance Team members.  Desrosiers was agitated and informed the team that she had been at the school all day dealing with Dance Team matters and that there would be no practice.

53.  On or about December 22, 2009, nine out of ten Dance Team members (not including H.S. or A.S.) signed a petition written to Cotzin asking that H.S. be removed from the Dance Team.  Desrosiers had turned the Dance Team members, many of whom were H.S.'s friends, against H.S.

54.  Commencing on or about December 21, 2009, and continuing through March 26, 2010, Suffredini and Cotzin were continuously informed, in writing, and/or in person, by R.S. and D.S. of Desrosiers' bullying, harassment, abuse, unfair and/or unreasonable and/or baseless punishment, intimidation, and/or retaliation towards H.S. and/or A.S. Suffredini supported Desrosiers' actions in removing H.S. as Head Captain despite, as the Hearing Officer stated, "the overwhelming evidence of the inappropriateness, immaturity and dishonesty of the advisor."

55. Even though H.S. had known weaknesses in self advocacy, and Board staff was well aware of the problems H.S. was having with Desrosiers, no staff member considered convening a PPT meeting, and no staff member followed up with H.S. to assist her with these difficulties. Even Cotzin, who was well aware of the problems H.S. was having with Desrosiers, and who had been a member of the PPT for H.S. did not request a PPT or take any other actions to assist H.S.

56. After H.S.'s removal as Head Captain, she remained one of four Captains, but was not treated as a Captain and she was given no responsibility.

57. Desrosiers was told by Cotzin not to publicize H.S.'s removal as Head Captain. Desrosiers informed the Dance Team of H.S.'s removal as Head Captain at the next Dance Team practice. This was done to humiliate H.S. After H.S.'s removal as Head Captain, she was continually ignored, mistreated and bullied by Desrosiers.

58. Commencing on or about December 30, 2009, and continuing through March 26, 2010, each and every member of the Board was kept informed, in writing, and/or in person, by R.S. and D.S. of Desrosiers' bullying, harassment, unfair and/or unreasonable and/or baseless punishment, intimidation, and retaliation towards H.S. and A.S..

59. On or about December 30, 2009, and continuing through March 26, 2010, Suffredini and each and every member of the Board were informed, in writing, and/or in person, of Desrosiers' refusal to follow prudent and/or proper safety procedures at practices. Neither the Board nor Suffredini took appropriate and/or meaningful action to ensure that Desrosiers followed prudent and/or proper safety procedures at practices. In fact, the Hearing Officer found that "[a]ny interventions by the Parents were ineffective, to the point that the family was deemed 'evil' by the Board staff. The Board animosity

toward the Parents was apparent in the emails and correspondence which surround this case."

60.  Although Cotzin had ordered Desrosiers to stop using the "Official Somers High School Dance Team" Facebook site in October, 2009, on or about January 16, 2010, H.S. and A.S. received a Facebook inbox from Desrosiers which ordered them to return their full two piece uniforms.  Two other girls were ordered to return one piece each of their uniforms.  H.S. and A.S. had not complained about the fit or quality of their uniforms despite what the inbox stated.  H.S. and A.S. were concerned that if they turned in their uniforms they would be unable to dance at the basketball game scheduled just days later.  H.S. and A.S. were also concerned that if they did not turn in their uniforms as instructed, there would be negative repercussions.  R.S. and D.S. addressed their daughters' concerns to the school administration but their concerns were ignored.

61.  When H.S. and A.S. arrived at practice on January 19, 2010 without the uniforms which were to be returned, they were chastised by Desrosiers and told there would be alternative consequences if they could not follow instructions.  H.S. and A.S. believed that Desrosiers was threatening them with removal from the Dance Team.

62.  On or about February 4, 2010; February 6, 2010; and February 9, 2010; Desrosiers presented awards in violation of policies and procedures set forth in the Coaches' Handbook to eleven of the twelve Dance Team members.  A.S. was the only dance team member who did not receive an award.

63.  On or about February 11, 2010, a PPT was convened for H.S. for her annual review.  Her objectives continued to include "[d]evelop self advocacy skills: learn to ask and when to ask for assistance…"  The evaluation of this objective included staff

observation, and listed the percent/trials as 8/10, although no data was taken as to this objective.  The Hearing Officer found that "[d]uring this time, the Student was having serious problems with the dance team and other dance team members which was known by the Board staff and was the rumor at school.  No Board staff addressed these issues during the PPT meeting."

64.  On or about February 12, 2010, Desrosiers directed A.S. to perform a gymnastics stunt with a partner without the use of safety mats.  A.S.'s partner dropped A.S., who landed hard on her stomach on a concrete floor covered with a thin layer of carpet, causing A.S. to experience intense pain and suffering.

65.  On or about February 19, 2010, Desrosiers directed A.S. to perform a gymnastics stunt with a partner without the use of safety mats.  A.S.'s partner dropped A.S., who landed hard on her head and neck on a concrete floor covered with a thin layer of carpet, causing A.S. to experience intense pain and suffering.

66.  On February 26, 2010, Somers High School held Senior Night at its gymnasium.  At Senior Night, which took place at a boys' varsity basketball game, all seniors on the Dance Team, the cheerleading squad and the boys' varsity basketball team are recognized in front of the entire crowd.  Each senior is called out by name and presented with flowers purchased by their coach.  Each senior on the Dance Team (except for H.S.) was presented with a beautiful bouquet of flowers (roses, carnations, baby's breath and other greenery) and a card by Desrosiers.  H.S. was presented with a broken bouquet of carnations (no roses, baby's breath or other greenery) and she received no card.

67. R.S. and D.S. informed the Somers School Administration and the Board about the broken flowers, discrimination, and mistreatment of H.S. by Desrosiers. The Hearing Officer stated in response to this "outrageous bullying behavior by the dance team advisor" that "the advisor was not appropriately reprimanded and the Student continued to be bullied by the advisor."

68. Immediately after Senior Night, H.S. and A.S. were removed from the "Official Somers High School Dance Team" Facebook site (which Desrosiers continued to use for almost the entire Dance Team season despite being ordered by Cotzin to cease using the site in October, 2009) by Desrosiers and cut off from communication with the Dance Team.

69. At the next practice after Senior Night, the Dance Team began preparing for March Madness. March Madness was to be held in the Somers High School gymnasium on March 26, 2010, during the school day in front of the entire school student body, faculty and staff.

70. The Dance Team was to perform at March Madness and Desrosiers told the seniors on the Team that most of them would be given a solo dance. H.S., who was a senior, did not receive a solo dance.

71. At practice on or about March 5, 2010, Desrosiers created a new routine and choreographed it in such a way so that all of her seniors, except for H.S. were placed together in the middle of the formation. H.S. was placed in a back corner of the formation, and her sister A.S. was placed in the other back corner of the formation. After placing the girls in this formation, Desrosiers stated "look, all my seniors are together." H.S. did not speak out or make a complaint at that practice.

72.  At the next Dance Team practice, on or about March 8, 2010, H.S. was again placed in the back corner of the formation.  H.S. questioned Desrosiers, in a calm manner, as to why she was not placed in the formation with the other seniors.  Desrosiers took issue with H.S.'s question and threatened to remove H.S. from practice.

73.  On or about March 12, 2010, Cotzin, in the presence of H.S.'s guidance counselor, questioned H.S. about what occurred at practice on March 8, 2010.

74.  Cotzin stated in an email to Desrosiers that H.S. had acknowledged in a meeting that she had acted inappropriately at the March 8, 2010 practice and that no further inappropriate behavior by H.S. would occur.  According to both H.S. and her high school guidance counselor, Karen Regan who was present during the meeting, H.S. did not believe or acknowledge that she had acted inappropriately at the March 8, 2010 practice.

75.  Cotzin believed that Desrosiers was going to change H.S.'s position in the March Madness dance formation, as "it did not look right."  H.S.'s position was never changed.

76.  On or about March 16, 2010, H.S. resigned as captain and as a member of the dance team as she could no longer tolerate the bullying by Desrosiers and to avoid the humiliation of not dancing in the line with the other seniors in the Dance Teams' final performance in front of the entire student body.

77.  On or about March 22, 2010, Desrosiers designed two new dance routines to be performed at the March Madness assembly.  Both new dance routines placed A.S. in the back row by herself.

78.  Throughout H.S.'s senior year on the Dance Team, R.S. and D.S. complained to Cotzin, to Suffredini, and to the Board regarding the mistreatment of H.S. and A.S. by Desrosiers.  Cotzin allegedly investigated these complaints and H.S. and A.S.'s mistreatment by Desrosiers, but took no notes of any of his investigations nor did he document any steps he allegedly took to rectify these situations.  In fact Cotzin took no meaningful action to protect either H.S. or A.S. from the mistreatment inflicted upon them by Desrosiers.  But Cotzin did choose to forward many of the complaints of mistreatment of H.S. and A.S. to Desrosiers who continued to mistreat and humiliate H.S. and A.S. throughout the Dance Team season.

79.  Cotzin accepted whatever Desrosiers told him about H.S., despite the fact that she was a new hire to the school system and he had purportedly never met her before August, 2009.

80.  Although Cotzin admitted that the negative behavior that Desrosiers accused H.S. of exhibiting would be unusual for H.S., Cotzin never questioned any of H.S.'s teachers or her school counselor to learn if H.S. was exhibiting this alleged behavior in any of her classes or in any other situations.

81.  Cotzin instead determined that D.S. was an "evil person" because she raised issues with Desrosiers mistreatment of H.S.

82.  Suffredini allegedly investigated the numerous accusations regarding the mistreatment of H.S. by Desrosiers, but he allegedly also took no notes of his investigations nor did he document any of the steps taken to rectify these situations.  In fact Suffredini took no meaningful action to protect either H.S. or A.S. from the mistreatment inflicted upon them by Desrosiers.  He did however state in an email to

29

Bollinger and Palmer that "[i]f someone doesn't like the coach or the way the team is playing they should take their ball and just go home.  Everyone would be better served by doing this."

83.  Suffredini testified at the Special Education Hearing on November 5, 2010, that he could not understand this "big brouhaha" over Dance Team, which was not even a sport or an "official program of the district" and that R.S. and D.S's complaints regarding the mistreatment of their daughters were "petty."  In an email to all Board Members, Suffredini stated that Desrosiers "deserves a medal."  Further, in an email to R.S. and D.S. on or about March 9, 2010, Suffredini told R.S. and D.S that they were the bullies.

84.  On or about March 9, 2010, Devlin applauded Suffredini's characterization of R.S. and D.S. as the bullies, stating in an email that "[i]f I could give you an electronic standing ovation for your last email, I would do so.  You could not have done a better job expressing our Board's position on that matter.  That was outstanding!!!"

85.  The Board ignored R.S. and D.S.'s complaints.  When R.S. and D.S. brought their concerns of H.S. and A.S.'s mistreatment by Desrosiers to the Board, they were told that they could not criticize or make negative statements at Board meetings, notwithstanding that the conduct they were complaining of was harmful to their daughters.

86.  H.S. took lessons and goals from her IEP's regarding self advocacy and practiced self advocacy at school, at work and at home.  H.S. advocated for herself when she needed to change her schedules at her part time job at the Mountain View Restaurant.  H.S. advocated for herself at college.  H.S. advocated for herself at Somers High School when she needed to use the resource room or when she needed more time on tests.  H.S.

advocated for herself when she attempted to obtain funding for a paid coach for the

Dance Team.  H.S. advocated for herself when she attempted to solve the purple and

yellow uniform situation.  Immediately after advocating for a change in uniform colors,

H.S. was removed as Head Captain of the Dance Team.

## V.  CAUSES OF ACTION

## COUNT ONE (Attorney's Fees)

87.  By securing an order requiring the Somers Board of Education to provide the

only relief it possibly could, compensatory education, R.S., D.S. and/or H.S. became

prevailing parties under 20 U.S.C. Section 1415 as to the matters covered in this case,

and are therefore entitled to an award of costs and attorneys' fees incurred during the

administrative hearings as well as in connection with this lawsuit.

## COUNT TWO (Appeal of Administrative Decision Pursuant to 20 U.S.C. Section 1415(i)(2)

88.  The allegations contained in paragraphs 1 through 87 are hereby incorporated

by reference as if fully set forth herein.

89.  Extracurricular activities may be considered as being part of the free

appropriate public education which is guaranteed by the IDEA.  All of H.S.'s IEPs refer

to her participation in extracurricular activities (of which the only extracurricular activity

she participated in was the Dance Team) or specifically to her participation on the Dance

Team.

90.  The Hearing Officer found that H.S. "had a known weakness and simply was

not afforded the necessary supplementary aids and services to provide her equal

opportunity to participate in the extracurricular activity as required by the IDEA."  The

Hearing Officer also found that "the actions or the dance team advisor were some type of bullying, harassment and intimidation of H.S."  The Hearing Officer also found that "the Board acquiesced in the bullying by demoting the Student and supporting the advisor's outrageous behavior which resulted in the Student not seeking appropriate assistance, but rather giving up and resigning from the extracurricular activity."  For some inexplicable reason however, the Hearing Officer did not find that the failure to provide H.S. with the necessary supplementary aids and services was a denial of her right to a free appropriate public education; or that her demotion from head captain to captain was not a denial of her right to a free appropriate public education.

91.  The Hearing Officer stated that "[i]t is unclear whether the IEP was appropriately implemented regarding self advocacy since the self advocacy goal was not measurable as written.  The IEP was also silent as to extracurricular activities, except for the checking of the box on the form, a step which Board staff took although they didn't know why."  Yet, in an apparent contradiction, the Hearing Officer found that H.S's IEP "as written was fully implemented."  The Hearing Officer found this even though dance team was mentioned in two IEPs and even though she also found that H.S. was not successfully self advocating.  If the goal was to self advocate and H.S. was not successfully self advocating, the IEP as written was not fully implemented.

92.  The Hearing Officer's decision in Student v. Somers Board of Education, No. 10-0490 was erroneous only to the following limited extent:

a.  The Hearing Officer's finding that that H.S. "was not denied a free appropriate public education [FAPE] and/or had a change in educational placement under IDEA in that she was bullied, harassed and/or intimidated by the dance team advisor and was

forced to resign from the dance team as a result of her self-advocacy during her extracurricular dance team" was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; and/or arbitrary, capricious or characterized by abuse of discretion; and/or clearly contrary to and violative of established law.

b.  The Hearing Officer's finding that H.S.'s removal as Head Captain of the Somers High School Dance Team "was not a violation of her right to a free appropriate public education under the IDEA" was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; and/or arbitrary, capricious or characterized by abuse of discretion; and/or clearly contrary to and violative of established law;.

c.  The Hearing Officer's finding that that H.S.'s "IEP as written was fully implemented" was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; and/or arbitrary, capricious or characterized by abuse of discretion; and/or clearly contrary to and violative of established law.

93.  The Hearing Officer violated H.S.'s rights under the IDEA in that she failed to find that H.S. "was not denied a free appropriate public education [FAPE] and/or had a change in educational placement under IDEA in that she was bullied, harassed and/or intimidated by the dance team advisor and was forced to resign from the dance team as a result of her self-advocacy during her extracurricular dance team"; and that she failed to find that H.S.'s removal as Head Captain of the Somers High School Dance Team "was not a violation of her right to a free appropriate public education under the IDEA"; and that she found that H.S.'s "IEP as written was fully implemented."

**COUNT THREE (Free Speech Claims; 42 U.S.C. Section 1983 Civil Rights Violations Claims; 42 U.S.C. Section 1985 Civil Rights Violations Claims; and 42 U.S.C. Section 1986 Civil Rights Violations Claims by R.S. and D.S. against Board; Board Members (Palmer, Formeister, Devlin, Potrikus, Taylor, Lees, Kirkpatrick, Bollinger, Marquardt, herein after collectively "Board Members"); and Suffredini**

94.  The allegations contained in paragraphs 1 through 93 are hereby incorporated by reference as if fully set forth herein.

95.  The Board's Agenda Item No. 4 for each and every Board meeting is entitled Audience To Citizens/Staff/ Students.  Members of the public are allowed to address the Board during this Agenda Item.  On or about January 26, 2010, during a properly noticed Board meeting, R.S. was recognized by the Board after he raised his hand to speak during the Audience to Citizens/Staff/Students public comment portion of the meeting.  Once R.S. began speaking, Palmer, acting individually and/or in his official capacity as Chairman of the Board, interrupted and reprimanded him as he was speaking.  Palmer refused to allow R.S. to speak to the Board regarding Desrosiers' mistreatment of his daughters, H.S. and A.S., during the public participation portion of the Board's meeting.  R.S. was not allowed to speak solely due to the content of his statements to the Board.

96.  On or about March 8, 2010, during a properly noticed Board meeting, R.S. was recognized by the Board after he raised his hand to speak during the Audience to Citizens/Staff/Students public comment portion of the meeting. Palmer, acting individually and/or in his official capacity as Chairman of the Board, during the public participation portion of the Board's meeting, interrupted and reprimanded R.S. and attempted to stop R.S. from speaking about Desrosiers' mistreatment of his daughters,

H.S. and A.S.  R.S. was interrupted while he was speaking based solely on the content of his statements to the Board.

97.  On or about March 8, 2010, during a properly noticed Board meeting, D.S. was recognized by the Board after she raised her hand to speak during the Audience to Citizens/Staff/Students public comment portion of the meeting.  Palmer, acting individually and/or in his official capacity as Chairman of the Board, on two occasions during the public participation portion of the Board's meeting, interrupted and reprimanded D.S. and attempted to stop D.S. from speaking about Desrosiers' mistreatment of her daughters, H.S. and A.S.  D.S. was interrupted while she was speaking based solely on the content of her statements to the Board.

98.  On or about March 9, 2010, Suffredini, acting individually and/or in his official capacity as Superintendent, in an email to R.S. and D.S., reprimanded R.S. and D.S. about their speaking during the public participation portion of the Board's meetings, and instructed R.S. and D.S. to, in the future, refrain from criticizing school personnel during the public participation portion of the Board's meetings, per Board's policy.

99.  The Board's policy regarding "Meeting Conduct", states in relevant part "No oral presentation shall include charges or complaints against any employee of the Board of Education, regardless of whether or not the employee is identified in the presentation by name or by another reference which tends to identify" (the "Policy").  Said provision of said Policy is unconstitutional, either on its face or as applied in this case, in that said Policy violates R.S. and D.S's rights to free expression guaranteed by the First Amendment to the United States Constitution and the Constitution of the State of Connecticut.

100.  Palmer, all other Board Members, and Suffredini, all acting individually and/or in their official capacities, and acting under the color and pretenses of the statutes, ordinances, regulations, customs, and usages of the State of Connecticut and the rules, policies, procedures and direction of the Board, denied R.S. and D.S., the rights guaranteed them by the First Amendment to the United States Constitution and Article I, Section 5 of the Connecticut Constitution, and said action was in violation of 42 U.S.C. Section 1983.

101.  Suffredini's email of March 9, 2010 to R.S. and D.S., acting individually and/or in his official capacity as Superintendent, and acting under the color and pretenses of the statutes, ordinances, regulations, customs, and usages of the State of Connecticut and the rules, policies, procedures and direction of the Board, violated R.S. and D.S.'s rights guaranteed them by the First Amendment to the United States Constitution and Article I, Section 5 of the Connecticut Constitution, in that the demand contained in said email was a prior restraint of R.S. and D.S.'s right to free expression, and in violation of 42 U.S.C. Section 1983.

102.  The Board, Palmer, all other Board Members, and Suffredini, acting individually and/or in their official capacities, acted in concert, agreement, and conspiracy with one another to deprive R.S. and D.S. of their constitutional rights and privileges under the First Amendment to the United States Constitution and engaged in acts under the color and pretenses of the rules, policies, procedures and direction of the Board, as aforesaid, to further said conspiracy in violation of 42 U.S.C. Section 1985.  In addition, each Counterclaim Defendant (Board, Board Members, Palmer and Suffredini) acting individually and/or in their individual capacities, failed to take steps to prevent the

unconstitutional acts of their respective co-conspirators, despite a duty to do so, in violation of 42 U.S.C. Section 1986.

103. The Board, despite knowledge of the conspiracy and a duty to act failed to take appropriate action to prevent the conspiracy in violation of 42 U.S.C. Section 1986.

104. As a direct and proximate cause of the aforesaid wrongful acts and conduct of the Counterclaim Defendants, jointly and/or severally, R.S. and D.S. suffered extreme indignities and humiliation, severe emotional distress, mental anguish, loss of enjoyment of life, a deprivation of rights under the Constitutions of the United States and the State of Connecticut, and loss of standing in the community

**COUNT FOUR (42 U.S.C. Section 1983 Civil Rights Violations Claims by all Counterclaim Plaintiffs against all Counterclaim Defendants)**

105. The allegations contained in paragraphs 1 through 104 are hereby incorporated by reference as if fully set forth herein.

106. Each and every act alleged herein was done by the Counterclaim Defendants, not only as individuals and/or as Members of the Board; and/or by Suffredini as an individual and as Somers' Superintendent of Schools; and/or by Cotzin as an individual and/or as Somers High School's principal; and/or by Walker as an individual and/or as Somers High School's Athletic Manager; and/or by Desrosiers as an individual and/or as Somers High School's Dance Team Coach; but under the color and pretenses of the statutes, ordinances, regulations, customs, and usages of the State of Connecticut, and the rules, policies, and direction of the Somers Public Schools, having been clothed with both actual and apparent authority by the governing body, the Board.

107.  As a direct and proximate cause of the aforesaid wrongful acts and conduct of the Counterclaim Defendants, jointly and/or severally, the Counterclaim Plaintiffs suffered:  extreme indignities and humiliation, severe emotional distress, mental anguish, loss of enjoyment of life, a deprivation of rights under the Constitutions of the United States and the State of Connecticut and loss of standing in the community; and H.S. and A.S. have been held up to ridicule by their peers and have suffered the loss of rights and benefits under the school handbook and under school policies; and H.S. has lost her statutory right to a free and appropriate public education free and clear of the above deprivations, and the loss of enjoyment of her senior year in high school.

108.  The actions of the Counterclaim Defendants impeded and hindered the course of justice with the intent to deny the Counterclaim Plaintiffs the equal protection of the laws.

**COUNT FIVE (42 U.S.C. Section 1983 Civil Rights Violations Claims; 42 U.S.C. Section 1985 Civil Rights Violations Claims; 42 U.S.C. Section 1986 Civil Rights Violations Claims; 20 U.S.C. Section 1400 et seq. Claims; and Equal Protection Claims by H.S. against all Counterclaim Defendants)**

109.  The allegations contained in paragraphs 1 through 108 are hereby incorporated by reference as if fully set forth herein.

110.  H.S. has a learning disability and is considered a special education student with an IEP.

111.  The Individuals With Disabilities Education Act (the "IDEA") 20 U.S.C. Section 1400 et seq. requires that all students receive a "free and appropriate public education and related services designed to meet their unique needs."  The IDEA also

requires that school districts assure that children with disabilities participate to the maximum extent appropriate with their non-disabled peers in nonacademic and extracurricular activities.

112.  The Counterclaim Defendants' actions and/or failure to take appropriate actions caused H.S. to resign from the Dance Team.  H.S. was not able to participate to the maximum extent appropriate with her non-disabled peers in nonacademic and/or extracurricular activities, in violation of 20 U.S.C. Section 1400 et seq., 42 U.S.C. Section 1983, the Fourteenth Amendment to the United States Constitution, and the Twenty-First Amendment to the Connecticut Constitution because of the Counterclaim Defendants' actions and/or lack of actions; and the Counterclaim Defendants engaged in said actions and/or failed to take said actions under the color and pretenses of the statutes, ordinances, regulations, customs, and usages of the State of Connecticut and the rules, policies, procedures and direction of the Board, as aforesaid.

113.  The Counterclaim Defendants acted in concert, agreement, and conspiracy with one another to deprive H.S. of her constitutional rights and privileges under 20 U.S.C. Section 1400 et seq., the Fourteenth Amendment to the United States Constitution, and the Twenty-First Amendment to the Connecticut Constitution and engaged in acts under the color and pretenses of the statutes, ordinances, regulations, customs, and usages of the State of Connecticut and the rules, policies, procedures and direction of the Board, as aforesaid, to further said conspiracy in violation of 42 U.S.C. Section 1985.  In addition, each Counterclaim Defendant failed to take steps to prevent the unconstitutional acts of his/her respective co-conspirators, despite a duty to do so, in violation of 42 U.S.C. Section 1986.

114.  The Board, its individual Members, and Suffredini, despite knowledge of the conspiracy and a duty to act failed to take appropriate action to prevent the conspiracy in violation of 42 U.S.C. Section 1986.

115.  As a direct and proximate cause of the aforesaid wrongful acts and conduct of the Counterclaim Defendants, jointly and/or severally, H.S. suffered:  extreme indignities and humiliation, severe emotional distress, mental anguish, loss of enjoyment of life, loss of enjoyment of her senior year in high school, loss of rights and benefits under the school handbook and under school policies, a deprivation of rights under the Constitutions of the United States and the State of Connecticut, loss of standing in the community, she has been held up to ridicule by her peers, and she has lost her statutory right to a free and appropriate public education free and clear of the above deprivations.

**COUNT SIX (42 U.S.C. Section 1983 Civil Rights Violations Claims; 42 U.S.C. Section 1985 Civil Rights Violations Claims; 42 U.S.C. Section 1986 Civil Rights Violations Claims; 29 U.S.C. Section 794 et seq. Claims (Section 504 of the Rehabilitation Act of 1973); and Equal Protection Claims by H.S. against all Counterclaim Defendants)**

116.  The allegations contained in paragraphs 1 through 115 are hereby incorporated by reference as if fully set forth herein.

117.  H.S. is an "individual with a disability" entitled to the protection of Section 504 of the Rehabilitation Act of 1973 (hereinafter "Section 504") based on her learning disability.

118.  The Board is the recipient of federal funding subject to the nondiscrimination requirements of Section 504 in all of its programs and activities.

119.  H.S. was "otherwise qualified" under Section 504 to participate in the programs and activities of Somers High School as an enrolled student.  In particular, H.S. was otherwise qualified to participate as Head Captain and as a member of the Dance Team.

120.  The Counterclaim Defendants' actions and/or failure to take appropriate actions caused H.S. to resign from the Dance Team.  H.S. was not able to fully participate on the Dance Team in violation of Section 504, 42 U.S.C. Section 1983, the Fourteenth Amendment to the United States Constitution, and the Twenty-First Amendment to the Connecticut Constitution because of the Counterclaim Defendants' actions and/or lack of actions; and the Counterclaim Defendants engaged in said actions and/or failed to take said actions under the color and pretenses of the statutes, ordinances, regulations, customs, and usages of the State of Connecticut and the rules, policies, procedures and direction of the Board, as aforesaid.

121.  The Counterclaim Defendants acted in concert, agreement, and/or conspiracy with one another to deprive H.S. of her constitutional rights and privileges under Section 504, the Fourteenth Amendment to the United States Constitution, and the Twenty-First Amendment to the Connecticut Constitution and engaged in acts under the color and pretenses of the statutes, ordinances, regulations, customs, and usages of the State of Connecticut and the rules, policies, procedures and direction of the Board, as aforesaid, to further said conspiracy in violation of 42 U.S.C. Section 1985.  In addition, each Counterclaim Defendant failed to take steps to prevent the unconstitutional acts of his/her respective co-conspirators, despite a duty to do so, in violation of 42 U.S.C. Section 1986.

122.  The Board, its individual Members, and Suffredini, despite knowledge of the conspiracy and a duty to act failed to take appropriate action to prevent the conspiracy in violation of 42 U.S.C. Section 1986.

123.  As a direct and proximate cause of the aforesaid wrongful acts and conduct of the Counterclaim Defendants, jointly and/or severally, H.S. suffered:  extreme indignities and humiliation, severe emotional distress, mental anguish, loss of enjoyment of life, loss of enjoyment of her senior year in high school, loss of rights and benefits under the school handbook and under school policies, a deprivation of rights under the Constitutions of the United States and the State of Connecticut, loss of standing in the community, she has been held up to ridicule by her peers, and she has lost her statutory right to a free and appropriate public education free and clear of the above deprivations.

**COUNT SEVEN (42 U.S.C. Section 1983 Civil Rights Violations Claims; 42 U.S.C. Section 1985 Civil Rights Violations Claims; 42 U.S.C. Section 1986 Civil Rights Violations Claims; 42 U.S.C. Section 12101 et seq. Claims (The Americans With Disabilities Act of 1990); and Equal Protection Claims by H.S. against all Counterclaim Defendants)**

124.  The allegations contained in paragraphs 1 through 123 are hereby incorporated by reference as if fully set forth herein.

125.  H.S. is an "individual with a disability" entitled to the protection of the Americans With Disabilities Act (hereinafter "ADA") based on her learning disability.

126.  The Board is a government agency subject to the ADA in all of its programs and activities.

127.  H.S. was "otherwise qualified" under the ADA to participate in the programs and activities of Somers High School as an enrolled student.  In particular, H.S. was otherwise qualified to participate as Head Captain and as a member of the Dance Team.

128.  The Counterclaim Defendants' actions and/or failure to take appropriate actions caused H.S. to resign from the Dance Team.  H.S. was not able to fully participate on the Dance Team in violation of the ADA, 42 U.S.C. Section 1983, the Fourteenth Amendment to the United States Constitution, and the Twenty-First Amendment to the Connecticut Constitution because of the Counterclaim Defendants' actions and/or lack of actions; and the Counterclaim Defendants engaged in said actions and/or failed to take said actions under the color and pretenses of the statutes, ordinances, regulations, customs, and usages of the State of Connecticut and the rules, policies, procedures and direction of the Board, as aforesaid.

129.  The Counterclaim Defendants acted in concert, agreement, and/or conspiracy with one another to deprive H.S. of her constitutional rights and privileges under the ADA, the Fourteenth Amendment to the United States Constitution, and the Twenty-First Amendment to the Connecticut Constitution and engaged in acts under the color and pretenses of the statutes, ordinances, regulations, customs, and usages of the State of Connecticut and the rules, policies, procedures and direction of the Board, as aforesaid, to further said conspiracy in violation of 42 U.S.C. Section 1985.  In addition, each Counterclaim Defendant failed to take steps to prevent the unconstitutional acts of his/her respective co-conspirators, despite a duty to do so, in violation of 42 U.S.C. Section 1986.

130.  The Board, its individual Members, and Suffredini, despite knowledge of the conspiracy and a duty to act failed to take appropriate action to prevent the conspiracy in violation of 42 U.S.C. Section 1986.

131.  As a direct and proximate cause of the aforesaid wrongful acts and conduct of the Counterclaim Defendants, jointly and/or severally, H.S. suffered:  extreme indignities and humiliation, severe emotional distress, mental anguish, loss of enjoyment of life, loss of enjoyment of her senior year in high school, loss of rights and benefits under the school handbook and under school policies, a deprivation of rights under the Constitutions of the United States and the State of Connecticut, loss of standing in the community, she has been held up to ridicule by her peers, and she has lost her statutory right to a free and appropriate public education free and clear of the above deprivations.

**COUNT EIGHT (42 U.S.C. Section 1983 Civil Rights Violations Claims; and Right to Privacy Claims by H.S. and A.S. against Desrosiers and Cotzin)**

132.  The allegations contained in paragraphs 1 through 131 are hereby incorporated by reference as if fully set forth herein.

133.  The unauthorized release of confidential information of H.S. and A.S. by Desrosiers, acting under the color and pretenses of the statutes, ordinances, regulations, customs, and usages of the State of Connecticut and the rules, policies, procedures and direction of the Board, was a violation of the right to privacy guaranteed to H.S. and A.S. by the First and Fourteenth Amendments to the United States Constitution and a violation of 42 U.S.C. Section 1983.

134.  The unauthorized release of confidential information of H.S. by Cotzin, acting under the color and pretenses of the statutes, ordinances, regulations, customs, and

usages of the State of Connecticut and the rules, policies, procedures and direction of the Board, was a violation of the right to privacy guaranteed to H.S. by the First Amendment to the United States Constitution and a violation of 42 U.S.C. Section 1983.

135.  As a direct and proximate cause of the aforesaid wrongful acts and conduct of the Counterclaim Defendants, jointly and/or severally, H.S. and A.S. suffered: extreme indignities and humiliation, severe emotional distress, mental anguish, loss of standing in the community, they have been held up to ridicule by their peers; and H.S. has lost her statutory right to a free and appropriate public education free and clear of the above deprivations.

**COUNT NINE (42 U.S.C. Section 1983 Civil Rights Violations Claims; 20 U.S.C. Section 1400 et. seq. Claims; Due Process Claim; and Equal Protection Claim by H.S. against Desrosiers, Walker, and Cotzin)**

136.  The allegations contained in paragraphs 1 through 135 are hereby incorporated by reference as if fully set forth herein.

137.  The removal of H.S. as head captain of the Dance Team by Cotzin, Desrosiers, and/or Walker, all acting under the color and pretenses of the statutes, ordinances, regulations, customs, and usages of the State of Connecticut and the rules, policies, procedures and direction of the Board, was a violation of the due process rights of H.S. as guaranteed by the Fifth Amendment and Fourteenth Amendment to the United States Constitution and the Twenty-Ninth Amendment to the Connecticut Constitution, a violation of 42 U.S.C. Section 1983 and 20 U.S.C. Section 1400 et seq., and a violation of the equal protection rights guaranteed by the Twenty-First Amendment to the Connecticut Constitution.

138.  As a direct and proximate cause of the aforesaid wrongful acts and conduct of the Counterclaim Defendants, jointly and/or severally, H.S. suffered:  extreme indignities and humiliation, severe emotional distress, mental anguish, loss of enjoyment of life, loss of enjoyment of her senior year in high school, loss of rights and benefits under the school handbook and under school policies, a deprivation of rights under the Constitutions of the United States and the State of Connecticut, loss of standing in the community, she has been held up to ridicule by her peers, and she has lost her statutory right to a free and appropriate public education free and clear of the above deprivations.

**COUNT TEN (Infliction of Emotional Distress Claims by all Counterclaim Plaintiffs against all Counterclaim Defendants)**

139.  The allegations contained in paragraphs 1 through 138 are hereby incorporated by reference as if fully set forth herein.

140.  The actions of the Counterclaim Defendants, jointly and/or severally, were extreme and outrageous and performed negligently and/or with the intention of causing severe emotional distress to all of the Counterclaim Plaintiffs herein or with reckless disregard of the consequences.

141.  As a direct and proximate cause of the aforesaid wrongful acts and conduct of the Counterclaim Defendants, jointly and/or severally, all of the Counterclaim Plaintiffs suffered:  extreme indignities and humiliation, severe emotional distress, mental anguish, loss of enjoyment of life, a deprivation of rights under the Constitutions of the United States and the State of Connecticut and loss of standing in the community; and H.S. and A.S. have been held up to ridicule by their peers, and have suffered the loss of rights and benefits under the school handbook and under school policies; and H.S. has

lost her statutory right to a free and appropriate public education free and clear of the above deprivations, and the loss of enjoyment of her senior year in high school.

## COUNT ELEVEN (Negligence Claims by all Counterclaim Plaintiffs against all Counterclaim Defendants)

142.  The allegations contained in paragraphs 1 through 141 are hereby incorporated by reference as if fully set forth herein.

143.  The Counterclaim Defendants owed a duty to all of the Counterclaim Plaintiffs in one or more of the following ways:  duty to train and/or supervise and/or discipline employees, agents, and/or servants; duty to hire qualified employees, agents, and/or servants; duty to hire properly certified employees, agents, and/or servants; duty to protect children in the Counterclaim Defendants' care; duty not to interfere with parental rights; duty to respond to legitimate parental concerns; duty to follow policies in the Somers High School Handbook; duty to follow policies in the Somers High School Coaches' Handbook; duty to follow policies of the Board and/or school district; duty to follow the Code of Professional Responsibility for Teachers; duty to follow the Code of Conduct for School Administrators; and duty to adhere  to the Oath of Office for Members of the Town of Somers Board of Education.

144.  The aforesaid acts and conduct of the Counterclaim Defendants, jointly and/or severally, against all of the Counterclaim Plaintiffs constituted a breach of said duty or duties, and said acts and/or conduct constituted:  negligent hiring of an employee; negligent failure to train and/or supervise and/or discipline an employee; negligent failure to protect children in the Counterclaim Defendants' care; negligent retention of an employee; negligent interference with parental rights; negligent failure to respond to

legitimate parental concerns; negligent violation of policies in the Somers High School

Handbook; negligent violation of policies in the Somers High School Coaches'

Handbook; negligent violation of the policies of the Board and/or school district;

negligent violation of the Code of Professional Responsibility for Teachers; negligent

violation of the Code of Conduct for School Administrators; and negligent violation of

the Oath of Office for Members of the Town of Somers Board of Education.

145. As a direct and proximate cause of the aforesaid wrongful acts and conduct

of the Counterclaim Defendants, jointly and/or severally, all of the Counterclaim

Plaintiffs suffered: extreme indignities and humiliation, severe emotional distress, mental

anguish, loss of enjoyment of life, a deprivation of rights under the Constitutions of the

United States and the State of Connecticut and loss of standing in the community; and

H.S. and A.S. have been held up to ridicule by their peers, and have suffered the loss of

rights and benefits under the school handbook and under school policies; and H.S. has

lost her statutory right to a free and appropriate public education free and clear of the

above deprivations, and the loss of enjoyment of her senior year in high school; and A.S.

has suffered personal injuries, and pain and suffering.

## COUNT TWELVE (Reckless and Willful Misconduct Claims by all Counterclaim Plaintiffs against all Counterclaim Defendants)

146. The allegations contained in paragraphs 1 through 145 are hereby

incorporated by reference as if fully set forth herein.

147. The aforesaid acts and conduct of the Counterclaim Defendants, jointly

and/or severally, against all of the Counterclaim Plaintiffs constituted: reckless hiring of

an employee, willful failure to train and/or supervise and/or discipline an employee,

willful failure to protect children in the Counterclaim Defendants' care, reckless retention of an employee, willful interference with parental rights, willful failure to respond to legitimate parental concerns, reckless violation of policies in the Somers High School Handbook, reckless violation of policies in the Somers High School Coaches' Handbook, reckless violation of the policies of the Board and/or school district, reckless violation of the Code of Professional Responsibility for Teachers, reckless violation of the Code of Conduct for School Administrators, reckless violation of the Oath of Office for Members of the Town of Somers Board of Education.

148.  As a direct and proximate cause of the aforesaid wrongful acts and conduct of the Counterclaim Defendants, jointly and/or severally, all of the Counterclaim Plaintiffs suffered:  extreme indignities and humiliation, severe emotional distress, mental anguish, loss of enjoyment of life, a deprivation of rights under the Constitutions of the United States and the State of Connecticut and loss of standing in the community; and H.S. and A.S. have been held up to ridicule by their peers, and have suffered the loss of rights and benefits under the school handbook and under school policies; and H.S. has lost her statutory right to a free and appropriate public education free and clear of the above deprivations, and the loss of enjoyment of her senior year in high school; and A.S. has suffered personal injuries and pain and suffering.

## VI.    CLAIMS FOR RELIEF

Wherefore, the Counterclaim Plaintiffs respectfully request the Court to order the following relief:

1.  Assume jurisdiction over this action, including the supplemental Connecticut claims raised herein;

2.  Enter an order requiring Counterclaim Defendant to fully and faithfully implement the order of the Administrative Hearing Officer in Conn. Dept. of Educ. 10-0490.

3.  Issue a declaratory judgment that Board's Policy is a prior restraint of free speech which violates Counterclaim Plaintiffs' free speech rights guaranteed by the First Amendment to the United States Constitution;

4.  Reverse and set aside the Hearing Officer's Final Decision and Order to the extent that the Hearing Officer found that H.S. "was not denied a free appropriate public education [FAPE] and/or had a change in educational placement under IDEA in that she was bullied, harassed and/or intimidated by the dance team advisor and was forced to resign from the dance team as a result of her self-advocacy during her extracurricular dance team."

5.  Reverse and set aside the Hearing Officer's Final Decision and Order to the extent that the Hearing Officer found that H.S.'s "removal as head captain of the Somers High School Dance … was not a violation of her right to a free appropriate public education under the IDEA."

6.  Reverse and set aside the Hearing Officer's Final Decision and Order to the extent that the Hearing Officer found that H.S.'s "IEP as written was fully implemented."

7.  Award costs and attorney's fees incurred as a result of this appeal.

8.  Award compensatory damages to Counterclaim Plaintiffs;

9.  Award punitive damages to Counterclaim Plaintiffs;

10.  Award attorney's fees pursuant to 42 U.S.C. Section 1988;

11.  Award costs pursuant to Rule 54(d) of the Federal Rules of Civil Procedure.

12.  Grant such other and further relief as appears reasonable and just.


## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Counterclaim

Plaintiffs demand a trial by jury in this action.

Dated at Somers, Connecticut this 14th day of June, 2011.


THE COUNTERCLAIM PLAINTIFFS


By: /s/ George C. Schober
George C. Schober, Esq.
352 Billings Road
P.O. Box 597
Somers, CT  06071
Tel.  (860) 749-0026
Fax  (860) 749-7709
e-mail gcslaw@cox.net
Fed. Bar No. ct 15007

**<u>CERTIFICATION</u>**

I hereby certify that on June 14, 2011, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

<u>/s/ George C. Schober</u>
George C. Schober, Esq.